[Sac. No. 4558. In Bank.—August 9, 1932.]

A. PALADINI (a Corporation), Respondent, v. WILLIAM DURCHMAN, Appellant.

J. Logan Beamer for Appellant.

E. S. Mitchell, Daniel W. Hone and Leo B. Hone for Respondent.

WASTE, C. J.—Defendant appeals from the judgment entered in an action brought by plaintiff to recover the possession or the value of a certain boat. The complaint contains the usual allegation of plaintiff's ownership and right to immediate possession and defendant's wrongful withholding thereof. Defendant in his answer denied all of the allegations of the complaint.

In 1926 the defendant was the owner of the hull of the fishing boat involved herein. It was defendant's desire to procure an engine and other equipment to outfit the boat for fishing purposes. With this in view he entered into negotiations with the plaintiff, with the result that it installed in the boat an engine and such other equipment as from time to time was required to efficiently operate the same for fishing purposes. In consideration therefor defendant executed and delivered to plaintiff a "bill of sale" purporting to transfer to it all of his right, title and interest in and to the boat. The boat was thereupon registered in plaintiff's name. Contemporaneous with the execution of the written instrument and as part of the same transaction, it was orally agreed between the parties that defendant might purchase the boat, engine and equipment from plaintiff for $3,100. In furtherance thereof it was also orally agreed that defendant should deliver all fish caught by him to plaintiff, two-thirds of the value of which was to be returned to defendant, and the remaining one-third credited against the amount owing by him to plaintiff for current expenses (gasoline, bait, etc., furnished by plaintiff) and the balance, if any, to be applied as payment on the boat account. Plaintiff reserved the right to repossess itself of the boat in the event of defendant's failure to comply with the terms of his oral agreement to deliver to it all fish caught by him.

Alleging that defendant had repeatedly breached his agreement by failing to deliver his entire catch of fish to it, plaintiff brought this action to recover possession of the boat or its value. The court below found for plaintiff and entered judgment accordingly. There is ample evidence in the record to sustain the finding that defendant had breached his agreement to deliver all fish caught by him to plaintiff. However, the evidence is insufficient to support the finding that plaintiff is the *owner* of the boat and therefore entitled to the exclusive immediate possession thereof.

We are satisfied that the purported "bill of sale" legally constitutes nothing more than a chattel mortgage given as security for the repayment of the money expended by plaintiff in purchasing and installing an engine and otherwise equipping and supplying defendant's boat for fishing expeditions. The testimony of plaintiff's manager amply supports our conclusion in this particular. He testified in part:

"Mr. Beamer: Q. At the time that you drew up this bill of sale for Mr. Durchman, it was your intention at the time that that should be security for this engine? A. That that bill of sale was to be security for the payment of the engine? . . . Q. The bill of sale from Mr. Durchman to you was intended to be security for the payment of the engine? A. For the whole bill; there was more than the engine at that time. There was $3100 at that time that the bill of sale was made out. Q. Then the bill of sale at the time it was made out was intended as security for the payment of that money? A. It was. Q. In other words it would take the place of the usual mortgage? A. No, we didn't figure it would take the place of a mortgage. Q. You figured that the only interest that the Paladini Fish Company had in that boat was what Mr. Durchman owed you? A. Yes. We figured that the money that we had in the boat we had that security for it. Q. And if Mr. Durchman went down the next day you would give him the bill of sale back? A. Yes."

Clearly such a contract, even though plaintiff refused to take an agreement which was a mortgage in form, could not operate as a transfer of title to the property. (Civ. Code, sec. 2924; *Fraser* v. *Sheldon,* 164 Cal. 165, 172, 173 [128 Pac. 33]; *Bonestell* v. *Western Automotive Finance Corp.,* 69 Cal. App. 719, 723 [232 Pac. 734]; *Forest* v. *Burt,*

67 Cal. App. 564, 569 [227 Pac. 949] ; *Blodgett* v. *Rheinschild,* 56 Cal. App. 728, 736 [206 Pac. 674].) *Fraser* v. *Sheldon, supra,* is substantially on all fours with the present case. ▮ The fact that plaintiff was given momentary possession of the boat upon completion of the terms of the agreement, and that it was thereafter registered in plaintiff's name as owner, does not alter the character of the transaction as between the parties. The evidence discloses that the bill of sale or transfer was primarily intended to serve as security for plaintiff's disbursements on defendant's behalf. This being so, we must regard it as a chattel mortgage. ▮ The fact that an instrument may not comply with the legal requirements for the execution of a chattel mortgage, is immaterial as between the parties thereto. (Sec. 2973, Civ. Code: *Wolpert* v. *Gripton,* 213 Cal. 474 [2 Pac. (2d) 767].)

The legal title to the boat, therefore, remained in the defendant and the plaintiff has merely a lien for the amount owing to it. It necessarily follows that plaintiff is not entitled to possession unless authorized by the express terms of the mortgage. (Sec. 2927, Civ. Code.) The oral understanding of the parties that the plaintiff might take possession of the boat in the event of defendant's breach of agreement to deliver his entire catch of fish to plaintiff, cannot furnish such authorization, for such provision or understanding was necessarily incidental to and inseparably connected with that portion of the agreement "which attempts to cut off the debtor's equity of redemption and must therefore be held void *in toto''.* (*Bonestell* v. *Automotive Corp., supra,* pp. 723–726; *Blodgett* v. *Rheinschild, supra.*)

It follows from what has been said that the judgment must be reversed. We therefore find it unnecessary to discuss many other points urged in the briefs of the parties.

The judgment is reversed, with directions to the trial court to take any further evidence and permit such further or amended pleadings as may be necessary to enable it to render judgment in accordance with the conclusions reached herein.

Curtis, J., Langdon, J., Preston, J., Shenk, J., Seawell, J., and Tyler, J., *pro tem.,* concurred.

Rehearing denied.